[Sac. No. 4111. In Bank.—February 26, 1929.]

H. L. OGDEN, Appellant, v. UNITED BANK AND TRUST COMPANY (a Corporation) et al., Respondents.

Huston, Huston & Huston for Appellant.

Butler, Van Dyke & Desmond for Respondents.

SEAWELL, J.—Plaintiff, H. L. Ogden, appeals from a judgment dismissing his action against the United Bank and Trust Company and E. C. Peck, vice-president of said bank, upon the granting of a motion for a nonsuit made by defendants at the close of plaintiff's case.

On March 10, 1925, plaintiff entered into an oral contract with Mastick and Friel, a copartnership, whereby he agreed to do the plowing, leveling, harrowing, disking and other work necessary to place a ranch situate in the county of Sacramento leased by said copartnership from the defendant bank in condition for the planting of sugar beets. Plaintiff's compensation was to be estimated on a "cost-plus" basis. He was to be reimbursed for the amount paid out by him for wages, upkeep of tools and implements, stock hire and other expenses, and to receive as profit ten per cent of the total amount of all costs and expenses.

The defendant bank was not a party to said agreement, nor did it participate in the negotiations therefor between Mastick and Friel and plaintiff. Plaintiff testified that at the time he made the contract with Mastick and Friel he asked Mr. Friel if the bank was putting up the money for the work, and Friel told him it was; that he knew from what Mr. Friel said at that time that Mastick and Friel were not able to pay for the work.

Plaintiff commenced work on March 14th. On March 26th he and William Ragsdale, foreman of the ranch for Mastick and Friel, called at defendant bank. According to plaintiff, he went to the bank to verify the statement made by Friel that the bank was putting up the money for the work and to see if his money was safe and if he would be paid. Ragsdale testified that he had told Mr. Ogden to see Mr. Peck at the bank, as Mastick and Friel were "broke." Plaintiff exhibited a bill of more than $1300 for twelve days' work done by him and his employees to Mr. Peck, an officer of the bank, who stated that he knew nothing about the bill, that the bank had nothing to do with

it and was not responsible. A second conference was held on the following day, at which plaintiff, Ragsdale, Mastick, Friel, Peck, the manager, and Kendall, another officer of the bank, discussed the matter. Plaintiff there stated, as did Ragsdale, that unless the bank would order the work done and would be paymaster, he was through and would do no further work. Peck then told plaintiff and Ragsdale to go ahead and do the work. At the close of the conference at the bank, Mastick paid plaintiff $1,000 on account. Plaintiff continued working until late in May, when the ranch was abandoned because blight bugs attacked the beets and rendered further cultivation unprofitable. No further payments had been made to plaintiff by Mastick and Friel or by the bank. After failure of the crop, plaintiff demanded payment of the bank, and was informed by Peck that the bank could not put up any money because the crops were not there. He thereupon brought this action to recover $4,626.

Peck's direction to plaintiff to go ahead and do the work, given after both plaintiff and Ragsdale had declared their intention to quit unless the bank would be paymaster, may well be considered as an acceptance of liability on behalf of the bank for the amount due or to become due plaintiff under the terms of his contract for services already performed and thereafter to be performed. We think the contention of respondent bank that the court properly granted the nonsuit on the ground that the agreement upon the part of the bank was not binding upon it because made without consideration, cannot be sustained.

Plaintiff testified that no definite time for the payment of his charges was agreed upon between himself and Mastick and Friel, and no evidence was introduced as to the existence of a custom to make payments as the work progressed, rather than upon full completion thereof, with reference to which the contract was made. The payment of $1,000 to plaintiff by Mastick and Friel on March 27th, thirteen days after plaintiff commenced work, furnishes some evidence of an understanding that plaintiff was to be paid as the work progressed, in which event Mastick and Friel may have been in default in paying plaintiff at the time he called at the bank. But even assuming that Mastick and Friel had committed no breach of their obligation to pay plaintiff accord-

ing to the scale agreed upon, in considering the propriety of the nonsuit herein, it must be held that a judgment for plaintiff would find support in the evidence. We are of the view that the evidence, as the record now stands, will sustain the conclusion that plaintiff made the oral contract to work upon said ranch and began work in the belief, induced by representations of Mastick and Friel, cropping lessees of said bank, that they had arranged with the bank to finance them in operating the ranch, and without such financing they would not be able to pay plaintiff. When it developed at the first conference with Peck at the bank that no arrangements had been made which would insure payment to plaintiff, he was not thereafter bound to complete his contract, especially in view of the fact that Ragsdale, the foreman who accompanied plaintiff to the bank, had told him that Mastick and Friel were "broke." His continuance of work in reliance upon the agreement of the bank to assume responsibility for his compensation, according to the terms of his contract with Mastick and Friel, when he had a present right to refuse further performance under said contract, constituted a sufficient consideration for the undertaking of the bank.

Nor is the agreement of the bank invalid because not in writing. By the terms of section 2794, subdivision 3 of the Civil Code, a promise to answer for the antecedent obligation of another is deemed an original obligation of the promisor and not required to be in writing where made "upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation or from another person." (*Fuller* v. *Towne,* 184 Cal. 89 [193 Pac. 88].) There can be no doubt that the continuance of work by plaintiff inured to the benefit of the bank, which as lessor of the property was entitled to receive a portion of the crop as rental.

Respondent bank also contends in support of the nonsuit that there is a variance between the agreement pleaded in the complaint and the agreement proved, in that it is alleged in the complaint that defendants entered into an agreement hiring plaintiff to do work upon said ranch, whereas the only contract proved was the agreement between Mastick and Friel and plaintiff. The proof establishes a valid contract on the part of the bank to pay plaintiff ac-

cording to the scale set forth in the complaint. Although strictly speaking it may be inaccurate to aver that defendant bank hired plaintiff to do that portion of the work which he had already completed when the bank promised to pay him therefor, nevertheless any variance did not mislead defendants to their prejudice and hence cannot be held to be material. (Secs. 469, 470, Code Civ. Proc.)

The case is before us upon the evidence adduced by the plaintiff only. In passing upon motions for nonsuit, all conflicts of evidence must be resolved in favor of the plaintiff and all inferences which may fairly be indulged in favor of the plaintiff must be given effect. Applying this rule to the case we are of the view that the motion should have been denied as to defendant bank. As to defendant Peck the nonsuit must be sustained. Peck did not agree to become personally liable for plaintiff's charges, but acted solely as an official of the bank and on behalf of the bank.

As to Peck, the judgment is affirmed, and as to defendant bank, it is reversed.

Curtis, J., Waste, C. J., Shenk, J., and Richards, J., concurred.

Rehearing denied.

All the Justices present concurred.